Laroche v. Department of Veterans Affairs Laroche v. Department of Veterans Affairs If counsel are ready, we'll proceed. Members of the panel, my name is Albert Bachrach, I'm here representing the claimant appellant Dennis Laroche. There's no factual dispute in this case that appellant Laroche's notice of appeal to the Department of Veterans Appeals for Veterans Claims, along with my notice of appearance, which contains a certificate of service under penalty of perjury that it was mailed on November 7, 2007, was not mailed to the court on November 7, 2007. The issue in this case is the court's rule that postage meter marks do not count as post marks under the federal statute. The history of this is that originally, in creating the Court of Veterans Claims, Congress provided for a 120-day appeal period for veterans to file their notice of appeal with the court here in Washington, D.C. Back in the early 90s, there was a case by a person named Donato whose claim was mailed on the 117th day, I believe, but not received within the 120-day frame. And his case was dismissed and eventually Congress, looking at that result, decided to change the actual statute with regard to filing with the court. And in 1994, they passed the Veterans Benefits Improvement Act, and that public law provided that in addition to actually filing with the clerk within the 120-day period, you could, by U.S. mail, send your notice of appeal to the clerk within the 120-day period and the date on the envelope would serve as the date of actual filing of the appeal. But that statute says that that date is determined by the United States Postal Service postmark stamped on the cover in which the notice is posted. That's true. How can we interpret that United States Postal Service postmark to include meter marks? Excellent question. That is the heart of this appeal, I believe. It is. Well, we start with what everybody thinks they know but isn't true. There's no such thing as a postmark. So when Congress passes an act saying that it has to be postmarked USPS, there's no such thing. No such thing? You mean there's no definition of what a postmark is in this statute? Is that what you mean? Not only is there no definition in this statute controlling in our case, there's no definition in the USPS statutes, there's no definition in the Code of Federal Regulations, and there's no definition in any internal manual of the United States Postal Service. There is a word that people use to indicate the cancellation mark used by the Postal Service and there's a word used by the United States Postal Service called indicia, which has to do with stamping information on an envelope. But there is no such thing as postmark. And the case law from state courts is replete with that understanding. In this case, we have a rule at the Veterans Court about this issue, and that rule, Rule 4, in effect says postage metered mail doesn't count. It does say that. To what extent, if any, is that rule entitled to deference? I believe it's not entitled to deference by this court because one of the functions of this court with regard to the Veterans Court is that you review what the Veterans Court's doing de novo to make sure that it's legally correct. This is a legally correct appeal, and the issue for Mr. LaRoche is that it's in derogation of what Congress wrote to require that metered mail not count or to require that someone put a stamp on an envelope and take it to the post office to be run through their system. So you think the statute is unambiguous? I believe the statute is not only unambiguous, I believe that this court, in its ruling in MAPU, where this court talked about the difference between giving it to FedEx and having it delivered one day late but giving it to them in a timely manner, and giving it to the Postal Service, was that specifically you all said that it's clear that Congress wanted the postmark rule only to apply to a notice of appeal that is mailed using the Postal Service. We did use the Postal Service. We used the Postal Service and we put postage on it using a licensed meter from the Postal Service. As far as the United States Postal Service is concerned, metered mail sent out by this court from its mailroom is under license to the U.S. Postal Service and is the same as for all purposes. Is it for all purposes or is it for the purpose of purchasing the appropriate postage to be utilized? No, it's for all purposes. If we take the term postmark, which you say there is no such thing as a cancellation mark. No, I'm sorry. I probably did that poorly. It is a cancellation mark. That's where it starts. And that is a postmark, is it not? No, it's a cancellation mark. Why is a postmark not simply an official mark put by the post office on an item of mail to cancel the stamp and indicate the place and time of sending or receipt, which is from the Black's Law Dictionary? What's wrong with that? It's not true. Black's not authoritative for the Postal Service. The Postal Service doesn't agree that such a thing exists. Now, they do use similar terminology. The cancellation mark, for those of us old enough to have used stamps, are the lines that you find on postage when you get your mail that prevent the postage stamp itself from being reused. So the original purpose of the cancellation mark is not to date or to certify when the mail was received by a postal system, but starting with the British system, when they switched over from the receiver actually paying for the mail to a prepaid stamp system, the famous one-penny black, they needed some way to ensure that the stamp wasn't steamed off by the clever recipient and placed on the next piece of mail. And so the lines that are stamped through the postage stamp were the cancellation mark. In addition to that, the U.S. Postal Service, through its regulations, has something that's called indicia. The indicia are things that you recognize on the front of an envelope, such as the date. And that's part of what the Postal Service does with mail. It puts indicia on the top right-hand corner. But the Postal Service requires that the manufacturers and licensees of metered mail meet the indicia of the U.S. Postal Service. So under license from the Postal Service, the metered mail is stamped with a date, just like when the Postal Service adds an indicia, that indicia is also stamped to date with regard to the mail. So your position then, as I understand it, is that the word postmark is not restricted to any particular type of mark that might be applied by the Postal Service, that a postmark can be any mark relating to the posting of mail in the United States mail system, that it would apply equally to the postmark applied by the Postal Service as well as a postmark applied in accordance with Postal Service regulations by a private meter. Yes, Your Honor. Other than if you had written that sentence and I were editing you, every time after you originally said postmark, I would say indicia, that the indicia of the meter is the equivalent of the indicia of the Postal Service. We're trying to find out the meaning of the words United States Postal Service postmark in this statute. Congress obviously intended indicia. I don't think there would be any argument from anybody. One argument that you didn't make that I'm curious about, because for me I think it's a very significant argument, and that is that the statute not only says that the notice will be deemed to be received on the date of the United States Postal Service postmark, but it goes on to set forth two conditions. It says on the date of the Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the court and is mailed. So there are two conditions that have to be met in addition to application of a postmark. Certainly. So if a postmark is only the thing applied by the post office, then the phrase is mailed is redundant. It's superfluous. Because they only apply the postmark after it's mailed, once it's in their possession. The only time any kind of a postmark could be applied prior to the time the Postal Service has it in its possession, i.e. prior to the time it's mailed, is if it's applied by a meter or some other authorized notation. Correct? That is correct, Your Honor. I apologize to the court for missing the elephant in the room. Yes, that is entirely correct, Your Honor. Isn't there an – I'm sorry, go ahead. Just to finish the point, it just seems to me that the words, the condition and is mailed would be entirely surplusage if the interpretation of the United States Postal Service postmark is limited to the thing applied by the post office. Yes, Your Honor. I mean, it's so obviously correct. I truly do apologize for not thinking of it myself. I would only say I was probably too close to the forest to see the trees, but actually when you step back it becomes obvious that Congress wouldn't have put that language in if they hadn't intended the ability to use meters. Okay. You're in your rebuttal, but we'll reserve your rebuttal time. And Judge Harderton, I believe, had a question. I can raise it later. Thank you. All right. Thank you. We'll reserve your five minutes for rebuttal. Let's hear from the government. May it please the Court, I'm John Toder from the Justice Department representing the Department of Veterans Affairs. Good morning. The most natural reading of 38 U.S.C. 7266's requirement of United States Postal Service postmark is that it be a postmark that's affixed by the Postal Service. That's why it says Postal Service. There actually wasn't one on this envelope, was there? And there's no question that there wasn't. It was not put there by the Postal Service. But it was mailed through the Postal Service. That's what their affidavit says. It was arrived at the court, the Veterans Court on Day 125, passed the 120 days defined for delivery by 7266 unless the notice of appeal bore United States Postal Service postmark. Therefore, there's no question that it arrived. Not every indication arrived there in a mailed envelope, it just arrived late. And that doesn't meet the jurisdictional requirements set forth by Section 7266. My question is, if in fact, and you have no basis for disputing that it was mailed through the Postal Service, it didn't get a mark, a postmark, anything that could be used to apply 7266. What does that mean? It means that the way that was set forth in the statute and by Rule 4 of the Veterans Court to obtain the benefit of the liberalization of the delivery rule in 7266, which as opposing counsel explained, was the purpose of the statute in 1994 by the Congress and then Rule 4 of the Veterans Court was enacted pursuant to notice and comment following the enactment of that statute to permit the postmark rule. Those were the specific needs and bounds of that liberalization set forth in the postmark rule. But if the post office isn't applying the postmark, that's not going to be very effective, is it? That means every appellant is going to have to traipse down to the post office, wait in line, and get a hand-stamped envelope to be sure. If they wish to take advantage of the postmark rule, yes. And as this court held in Mapu, the postmark rule has very defined meets and bounds. And Federal Express, despite there being no dispute that the appellant in that case took it to Federal Express on day 120 and it arrived there on day 121, it wasn't the way it was set up in the postmark rule, again, despite there being no factual dispute that in fact they went through the act of using Federal Express on day 120. Can anyone apply any kind of a postal service notation using a postal meter without the authorization and approval of the United States Postal Service? It's our understanding that the postage meters are licensed to certain corporations. In this case it was Pitney Bowes. The current version of the Domestic Mail Manual, which is available online, is described in 39 CFR section, I believe it's 111, lists these corporations that are permitted to issue the postage meters. Apparently it's between the corporations and the individuals who purchase the meters, how they obtain the meters. But the issue here is... But the notation that's applied using a postal meter is specified by the post office, correct? There are regulations setting forth what you have to do in setting your postage meter. But in any case, there's two problems with using that here. One is it wasn't put there by the post office. Well, that's the question, is it not? Because the question is what do the means United States Postal Service postmark mean in this statute? It could mean a postmark applied by the United States Postal Service, but maybe it means a postmark applied by or authorized by the United States Postal Service. There's a couple of factors there. One, we think the most natural reading is a postmark placed there by the post office. But to the extent that the court perceives there to be any ambiguity in what the statute requires, we don't have to stop there. We have Rule 4 of the Veterans Court, which was on the notice of appeal that was filed by Appell, and I believe it's at page 17 of the defendant's appendix, which very clearly states, Rule 4 of the Veterans Court states that... So is there some deference requirement under Chevron or otherwise for us to defer to the Rule of the Veterans Court? With respect to the court rule, it's not an executive agency, so Chevron's probably not the precise analogy, but certainly in a case here where we have a statute authorizing, and I believe Section 7264 authorized the Veterans Court to promulgate its rules, you have a rule clearly set forth to enforce the requirements of Section 7266, and certainly based on a logical reading of the statute, there is no reason to find, as Appellant claims, that the rule is in derogation of the statute, merely because at most it enforces one clearly acceptable reading of the statute. In terms of deference, Rule 1 of those rules says, these rules do not extend or limit the jurisdiction of the court as established by law. So wouldn't that suggest, then, that to the extent that this affects the jurisdictional issue, that we don't necessarily defer to these rules? We think that the rules reflect the court's enforcement of the requirements of the statute and are based on the most natural reading of the statute. Well, let me address that with you for a minute, and I want to suggest to you that you listen carefully and be very careful in your answers to my questions. The first question, did you write this brief? I know you signed it. I reviewed the draft that was submitted and then inputted edits and then yes. Well, I asked your adversary about the language of the statute, and particularly what I perceived were the two conditions that are set forth, that the date applies is the date the Postal Service postmark is stamped on the cover, if the notice is properly addressed and is mailed. I noticed in your brief on page 6, you cite the statute and quote the statute, but the statute as set forth in your brief reads a little differently. It talks about on the date the United States Postal Service postmark stamped on the cover in which the notice of appeal is mailed. You've left out completely the conditions. We apologize for the oversight. Well, this is a very serious oversight and troubles me because, frankly, I think these conditions are of consequence in our assessment of how this statute should be read, and I find it quite disturbing that the very conditions that I think have some consequence here are missing from the quote in your brief. How could that happen? Not only is text missing, I can sort of understand if a line was missed, but the words of appeal were added. Your reading says in which the notice of appeal is mailed. The statute reads in which the notice is posted, if the notice is properly addressed to the court and is mailed. I don't know how that happened. I apologize to the court for the oversight. However, I don't think that that changed language, and I apologize for that being misstated. There was no intent to deceive the court in how we stated it. With respect to the court's question regarding and is mailed as a qualification, we're not contesting that it was mailed. We're just contesting that it wasn't a United States Postal Service postmark on what was mailed. Does the United States Postal Service ever apply a postmark prior to the time something is mailed? Our understanding based upon the regulations that were cited by Pellant was that there's a random spot checking that would occur. Isn't mailing putting it in the mailbox or putting it in the post office slot? Isn't that what mailing is? That's not necessarily the postmark. I don't know at what point. I would have to review the Postal Service regulations to see at what point they put on the postmark. The point is, is there any world in which the Postal Service can postmark, whatever that means, an item before it is mailed? I don't know if there is legislative history on this and is mailed. I can conceive of a possibility where someone takes an item to the post office and says, please put a postmark on this to confirm that this is today. And then waits for some reason and delivers it by other means other than using the Postal Service. But I don't know if that's the intent of this provision or not. You're saying that there are circumstances where someone would get a United States Postal Service employee at a Postal Service facility to apply a postmark and not have the document being in the Postal Service possession? I don't know whether the Postal Service regulations permit such a thing. That might be one reading of that language in the statute. I don't know if that's the situation that was envisioned in the statute. Then the statute requirement makes no sense because that envisioned that what, the post office can fix the mark and then a year later somebody can drop it in the mail? I mean, we wouldn't want to allow this exception to apply in that circumstance, right? No, and that's why I believe the structure of the statute requires that there be the postmark and the mailing and the address to the court. The mailing would be entirely superfluous. If the only time, if this statute only covers postmarks applied by the United States Postal Service as opposed to postmarks authorized and applied under license from the United States Postal Service, then the requirement that it also be mailed is superfluous. How can that be? The requirement of mailing is not superfluous insofar as there's a requirement to be sent through the Postal Service as is court found in MAPU not permitting the use of private delivery services. And there's no question that, we're not contesting that it was sent through the Postal Service, it just didn't bear a United States Postal Service postmark and they didn't go through the procedure and an attorney did not follow the procedure to do that. But your conclusion that it did not bear a United States Postal Service postmark rests on the interpretation of the statute as only applying to that mark which is applied by the Postal Service as opposed to a mark that might be applied by a meter licensed by the Postal Service. That is correct, Your Honor, and that is also the distinction relied upon in the cases cited by appellant. For example, the Bowman decision from the Ohio Supreme Court dealt with an Ohio unemployment regulation that required only a postmark as opposed to a United States Postal Service postmark and that case said that it is precisely because it is only a postmark rather than a United States Postal Service postmark that we will deem the privately metered postmark to be sufficient to satisfy the date requirement in that regulation. If the CAVC here had a regulation that said we allow privately metered mail, would you say that regulation is lawful? We would have to determine whether it was based upon a permissible construction of section 7266. Then that's the question. Would that have been based on a permissible construction of 7266? Well, I'm hesitant to say whether there's any construction where it would be permissible, but certainly based on this we think the most natural reading of the statute is that that is not the correct interpretation of the statute. Give me a case. You suggested some sort of non-chevron deference or something. Do you have any case to support the application of any kind of deference principles to regulations in this context? We think the closest case to these facts is the Mott Poop decision where this court stated that the statute 7266 CND which clearly states that a postal service postmark is necessary for the postmark to apply. It's clear that the Congress was aware that the Veterans Court required actual receipt of the notice of appeal and specifically limited the exception created by the postmark rule to notice of appeal sent through the postal service. Thus, notices of appeal delivered by other means were specifically excluded. By the rationale of Mott Poop, which limited the postmark rule to the conditions set forth in the statute, we think that by similar logic it would not be permissible to construe the statute to liberalize this already broadening of the original delivery rule beyond that what was intended by the most natural reading of the statute. Isn't one of the devils here that the postage meters can be adjusted for date, even though federal regulations provide that they must not be? That is a possibility. We're not alleging anyone did anything here. We don't have facts on that. But certainly if you compare a postage meter, which is totally in control of the person, with in some cases an incentive to make sure that a postage bears a certain date to the use of Federal Express, which has no such incentive and has a system set up to establish the proper date, it becomes logical that the intent of the Congress in 7266 was to put the placing of the postmark in the hands of the postal service, which has no incentive to place a particular date and which has the system in place, as opposed to a private meter, which is under the control of the party placing the date. Except that they have procedures for fixing it. I mean, the whole system with the post office allowing ... I mean, the post office has to allow these privately metered. Yes. That's right. They do. And isn't there a system by which they're supposed to monitor? And if the date is wrong, they're supposed to put another date on? So they have this whole system set in place so that that won't happen, right? The current regulations require both the party doing the mailing to correct the date if the date they're putting is wrong, or in other cases, if the post office during their random checks should find that a piece of mail is incorrectly dated, they correct the date. But that is putting the burden on the postal service to change an incorrect date if there is one, as opposed to the system of the statute and Rule 4, which provide that it is the burden of the party seeking to take advantage of the postmark rule, the liberalization of the notice of appeal period, to take it to the post office and get the postmark there. All right. Thank you very much. We'll hear from Mr. Baccarat. If I could pick up with that last question. A long time ago, probably in the 60s when I was in college, meters were mechanical, and people picked them up and took them to the post office where a postal employee took money and adjusted the meter. And at that point in history, like black and white televisions, that was the state of the art. And you could, at that point in history, actually set the date mechanically on the meter because that's how it was set, kind of like a date stamp where you do received in your office, as opposed to a date stamp now that you can get that's electronic and you set once, recognize daylight savings time, and it does time and date electronically. There hasn't been, since the late 1990s, under postal regulations, mechanical meters in the United States. They don't exist. You haven't seen one. Learned Counsel hasn't seen one. This court doesn't have one. You have a postage meter, but it works over the phone system or the Internet and hooks into Pitney Bowes. In the modern world, with electronic meters, when you want to put postage on your meter, you either pick up your telephone. Actually, you do. You pick up your telephone still, unless it's hooked through the Internet on your computer, and you say to Pitney Bowes, I want another $1,000 of postage. As you watch, the meter has another $1,000 of postage on it. The only difference would be you could go online and give them a bank draft, and you could watch it happen at the same time using the Internet as opposed to the phone service. What about setting the date that's actually set? Can't do that. Now, you can set the date in the other direction. My older sister told me to be careful using post and predating when I talk to you all. You can take the meter on today's date, and you could set it for Friday coming up, and you could run 5,000 pieces of mail through the meter intending to mail it on Friday. So a modern meter would allow my office on November 7, 2007, to set the meter to November 8 or November 9, but not to set it for November 6 and not on, for example, November 8 to set it back to November 7. You can only go forward. When you tell the machine to reset itself, it sets itself to today's date. There is no possibility of someone... One of the things that troubles me about this case, if we were looking at this case and we just had the statutory language, I would view your argument as somewhat different. This veteran, I fairly construed the statute in a way which is reasonable, and therefore we did it. What makes this case... So tell me if you disagree. It seems to me one could argue that this case is different simply because the CAVC has rules. So there's not any ambiguity here. Every practitioner and clock person knows you look at the court's rules for their rules, and there's no disagreement, is there, that the CAVC's rule is unambiguous, that what you did here was not permissible and was not going to be accepted, right? That's absolutely true. So doesn't that make this case a little different than when we're looking at just a statute and we're saying, well, was this a fair construction of the statute, at least in terms of notice and what at least the rules are, particularly if you agree that there's some rational basis for construing the statute in the way the CAVC did in its rules. That's what seems to set this case apart, in my view. So tell me why you disagree. I didn't concede that their rule is rational. I think it's irrational, and I think it's designed to limit the congressional intent to liberalize the ability of veterans to file these appeals. As of this October, lawyers are no longer going to be dealing with this mailing rule that you're going to decide because we can now file using a version of the electronic filing system that all the federal courts use, and up until they get it quite together at this court, not this court, but the veterans court, you can file your notice of appeal by email. In my local district courts around Florida, you can file your notice of appeal just online, and eventually, I assume the veterans court sometime this spring will get to the point where you can open a case online, enter your appearance, and do all that stuff. So for practitioners, this isn't going to be an issue in the future, but for veterans, many of whom are pro se as they get to the court, it's a big issue. And no, the court does not have the right to write a rule that limits what Congress intended the veteran to benefit from. If Congress had wanted only U.S. Postal Service marks applied by the U.S. Postal Service at a U.S. Postal Service facility, parentheses, no metered mail allowed, they would have written it that way. They didn't. The point of liberalizing this was so that veterans in the various states around the United States would not be disadvantaged by the 120-day rule to file their notice. The rule that the court is dismissing Mr. LaRoche's case under is a rule that doesn't do what Congress intended. Congress's intent, as counsel said, was to liberalize the process. Congress could have, as it often does when court decisions rule against citizens, go, OK, that's how it's going to be. Or, just like Congress recently did with regard to pay differential sex discrimination cases, Congress can say, you know, we don't like what the court did, and we're going to change it. And so I believe that the Court of Veterans Claims is absolutely wrong in its rule. And its rule is in derogation. Not of the common laws we usually use the term, but certainly in derogation of the statute. And this court should not give it any deference. Thank you, Mr. MacRack. Your time has expired. Thank both counsel. The case is submitted. Thank you. All rise.